UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHRIS BARNES | * | CIVIL ACTION |
| VERSUS | * | NO: 05-6428 |
| N. BURL CAIN, WARDEN | * | SECTION: "F"(6) |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, Chris Barnes, filed a habeas corpus application with this court, arguing that his trial counsel was ineffective due to his failure to investigate and present testimonial evidence supporting his claim of self-defense. On April 9, 2008, the undersigned magistrate judge issued a report and recommendation (rec. doc. 11) recommending that petitioner's habeas corpus application be dismissed as time-barred. On or about April 22, 2008, petitioner submitted objections (rec. doc. 13) to the magistrate judge's report and recommendation. On June 11, 2008, the district court issued an order (rec. doc. 14) remanding this matter to the undersigned magistrate judge. Before addressing the issue which constitutes the basis of the district court's remand, this court shall provide the following background information.

## I. BACKGROUND

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner is required to bring his habeas corpus claims pursuant to 28 U.S.C. §2254 within one year from "the latest of -"

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

**(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

**(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1) (West 2008). The State, in its response (rec. doc. 7), contended that petitioner's habeas application was untimely, under §2244(d)(1)(A), because it was not filed within one year from the date on which his state court judgment became final. Petitioner, in his memorandum supporting his original federal habeas petition (rec. doc. 3) and in his traverse to the State's response (rec. doc. 10), countered that his habeas application was timely, under §2244(d)(1)(D), because it was filed within one year from the date on which he discovered the factual predicate supporting his ineffective assistance of counsel claim based on counsel's failure to introduce evidence supporting his self-defense theory. Petitioner described the factual predicate or "newly discovered evidence" as witnesses who had "first hand knowledge" of threats made by the victim against petitioner.[1] Petitioner stated that he gave "the list of potential witnesses" to defense counsel's investigator, Thomas Gereighty, as evidenced by Gereighty's trial testimony on "5/13/98".[2] Based upon this representation, the magistrate judge, in his report and recommendation, concluded that even

---

[1]*See* Federal rec., doc. 3, petitioner's supporting memorandum at p. 4.

[2]*See* Federal rec., doc. 3, petitioner's supporting memorandum at p. 4.

2

utilizing §2244(d)(1)(D), rather than §2244(d)(1)(A), and employing the date, "5/13/98", as the date on which petitioner discovered the factual predicate supporting his ineffectiveness claim, his habeas application was still time-barred.[3]

Petitioner, in his objections to the magistrate judge's report and recommendation, identified his "factual predicate" as potential witnesses "Wilford Stevens" and "Michael Lott".[4] Further, petitioner attached, to his objections, affidavits from both Stevens and Lott.[5] Petitioner also stated, in his objections, "that the potential witness 'Michael Lott' was not made known to [him] until long after he was convicted of this crime."[6] Petitioner explained that "[h]e discovered Mr. Lott as a witness through Mr. Wilford Stevens and latter [sic] obtained the affidavit from Mr. Lott him-self [sic] on October 17, 2003."[7]

A comparison of the magistrate judge's report and recommendation with petitioner's objections to the report and recommendation reveals a conflict or discrepancy as to when petitioner discovered a portion of his factual predicate, specifically, the identity of potential

_____

[3]*See* Federal rec., doc. 11, magistrate judge's report and recommendation at p. 7, n. 12.

[4]*See* Federal rec., doc. 13, petitioner's objections, enumerated paragraph 2. Petitioner did not fully identify Stevens or Lott in either his memorandum supporting his original federal habeas petition (rec. doc. 3) or in his traverse to the State's response (rec. doc. 10).

[5]Petitioner did not attach these affidavits to either his original federal habeas petition or to his traverse to the State's response.

[6]In contrast, petitioner, in his objections, admitted that he knew about Stevens prior to his May, 1998 conviction. Petitioner's knowledge of Stevens is evidenced by the fact that he provided Stevens' name to his trial attorney's investigator. *See* Federal rec., doc. 13, petitioner's objections, enumerated paragraph 4.

[7]*See* Federal rec., doc. 13, petitioner's objections, enumerated paragraph 4.

witness Michael Lott, supporting his ineffectiveness claim.[8]  This matter has been remanded to the magistrate judge for the purpose of resolving this discrepancy and, thereafter, submitting a revised or supplemental Report and Recommendation.

## II.  ANALYSIS

Prescription, under §2244(d)(1)(D), does not commence to run on the date upon which a petitioner receives evidence supporting his factual predicate.  *See Flanagan v. Johnson*, 154 F.3d 196, 198-199 (5th Cir. 1998) (prescription did not commence to run on date supporting affidavit was secured; petitioner "is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim."); *Johnson v. Lambdin*, 2007 WL 521920, *3 (M.D. Fla. 2007) (petitioner's receipt of affidavit from potential witness detailing what his testimony would have been had he been called to testify did not commence running of prescription under §2244(d)(1)(D)).  Nor does prescription commence to run on the date upon which a petitioner actually discovers his factual predicate. *See Redmond v. Jackson*, 295 F.Supp.2d 767, 771 (E.D.Mich. 2003), *citing Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("[T]he time commences under §2244(d)(1)(D) when the factual predicate of a petitioner's claim could have been discovered through the exercise of due diligence, not when it was actually discovered by a given prisoner.")

In the factually similar case of *Tate v. Pierson*, 177 F.Supp.2d 792, 796 (N.D.Ill.

---

[8]No such discrepancy exists with respect to when petitioner knew of the identity of his other factual predicate witness, Wilford Stevens.  In his objections, petitioner admits, as represented in the magistrate judge's report and recommendation, that he knew about Stevens in May, 1998, when his trial took place.

2001), one of petitioner's habeas claims was that his counsel was ineffective due to his

failure "to interview and call [as a witness at trial] Timothy Monltson".  Mr. Monltson

executed an affidavit, dated May 13, 1999, which provided:

> On July 13, 1991, I was coming out of my house. I am not sure of the
> time but I know it was dark outside.  I heard gun shots and I observed some
> guys running.  I then was frightened and went back inside my house.
>
> * * * * * *
>
> At the end of the month I heard that an individual by the name of
> Timothy Tate was arrested for the crime which occurred a few houses from
> mine.  The fact of the matter is that I know Timothy Tate from the
> neighborhood.  He was not there at that crime scene nor was he the person
> doing the shooting.  I do not know who were the people doing the shooting
> but I surely know it was not Timothy Tate.

*Tate*, 177 F.Supp.2d at 800.

With regard to the above affidavit and petitioner's claim that the execution date of

May 13, 1999, triggered the running of prescription under §2244(d)(1)(D), the *Tate* court

noted:

> Monltson's affidavit does not specifically state when he first communicated
> with Tate or an intermediary.  In the habeas petition itself, Tate alleges that
> Monltson was noted as a witness in police reports, but that he does not
> know if the police reports detailed his possible testimony.  He further
> alleges that trial counsel failed to contact Monltson.  Additionally, Tate
> alleges:  "Petitioner was able to locate Mr. Monltson through the exercise of
> due diligence after petitioner discovered, from [a] reliable source, that Mr.
> Monltson had eyewitnessed the shooting....  Mr. Monltson became involved
> in this case after petitioner located him and was able to secure an affidavit
> not until May 13, 1999."  Petition at 27-28.

*Tate*, 177 F.Supp.2d at 800.

In rejecting petitioner's claim that May 13, 1999 was the date upon which

5

prescription commenced to run under §2244(d)(1)(D), the *Tate* court reasoned:

> Tate identifies the date of Monltson's affidavit, but does not state when he
> learned the underlying fact of what Monltson's testimony would be.
> Moreover, Tate conclusorily alleges due diligence, but does not provide any
> facts supporting that he exercised due diligence.  Tate has not adequately
> alleged or supported that he did not and could not learn of Monltson's
> potential testimony until May 13, 1999.

*Tate*, 177 F.Supp.2d at 800 (citations omitted).

In *Redmond*, 295 F.Supp.2d at 772, petitioner contended that he had "newly

discovered evidence ... in the form of an affidavit from a co-defendant, Mark Ford, which

... he did not receive until January 14, 1998."  The court, however, declined to extend

petitioner's prescriptive period under the provisions of §2244(d)(1)(D) by using January

14, 1998 as the date when prescription commenced to run.  The court, noting that "a

habeas petitioner has the burden of proof in establishing that he exercised due diligence in

searching for the factual predicate of [his] habeas claims", reasoned:

> The primary problem the Court has with invoking §2244(d)(1)(D) to allow
> the one-year period to run from the date of the discovery of this evidence is
> that Petitioner has failed to offer any explanation how the factual predicate
> of his claims could not have been discovered earlier, nor does he indicate
> what steps, if any, he took to discover these claims.  Because Petitioner
> does not indicate when he discovered the factual predicate of his claims, the
> Court is unable to determine when the one-year period would commence
> pursuant to §2244(d)(1)(D).  This Court is unable to accept any argument
> from Petitioner that the factual predicate for his claims could not have been
> discovered sooner because any such argument is unsupported and
> conclusory.  In particular, Petitioner cannot invoke the provisions of
> §2244(d)(1)(D) with respect to Mark Ford's affidavit because Petitioner
> does not state when he learned about the underlying facts contained in

Ford's affidavit.

*Redmond*, 295 F.Supp.2d at 772 (citations omitted).

As was the case in *Tate* and *Redmond*, *supra*, petitioner, in the instant matter, offers no evidence as to when he actually discovered a portion of the factual predicate, i.e., the identity of Lott and his potential testimony, much less, what steps, if any, he took to fulfill his obligation to exercise due diligence for the purpose of discovering the factual predicate of his habeas claim.  Petitioner merely states that Wilford Stevens told him about Lott "long after" his May, 1998 conviction, and later, on October 17, 2003, he received an affidavit from Lott supporting his self-defense theory.  In the absence of evidence, other than unsupported and conclusory statements and/or testimony, reflecting that petitioner exercised due diligence in his effort to discover the factual predicate supporting his habeas claim, this court cannot properly conclude that petitioner has satisfied his burden of proof.  To do so would, practically speaking, render the habeas review process unworkable.  As the court explained, in the context of a habeas petitioner's claim that his attorney had denied him his right to testify at trial, a petitioner's "barebones assertion" to this effect "is insufficient to require a hearing or other action on his claim...."  *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991), *citing Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987).  The court reasoned:

> It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary-and also we think some substantiation is necessary, ... to give the claim sufficient credibility to warrant a further

7

investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 476.  *See also Turcious v. Dretke*, 2005 WL 3263918, *6 (S.D.Tex. 2005) (A habeas petitioner cannot prevail on a claim that he was denied his right to testify "merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand.").

Accordingly, the court finds that petitioner has failed to satisfy his burden of proving that he exercised due diligence in searching for a portion of the factual predicate, i.e., Lott's identity and potential testimony, of his ineffectiveness claim.  As such, he is not entitled to an extension of prescription pursuant to the provisions of §2244(d)(1)(D).[9] Alternatively, the court finds that petitioner's ineffectiveness claim is subject to dismissal under the doctrine of procedural default.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment.

_____

[9]The court, in its research of the above-discussed issue, did find two cases, *Daniels v. Uchtman*, 421 F.3d 490 (7th Cir. 2005), *cert. denied*, 546 U.S. 1095, 126 S.Ct. 1084, 163 L.Ed.2d 863 (2006), and *Davis v. Jackson*, 2006 WL 54421, *3 (E.D.Mich. 2006) wherein the respective courts simply utilized the execution dates of the supporting affidavits as the dates on which the factual predicates were discovered.  However, both *Daniels* and *Davis* involved situations where the pertinent affidavits were executed by eyewitnesses who had testified at the petitioners' trials and in their affidavits recanted their trial testimony. Further, in both *Daniels* and *Davis*, even applying the provisions of §2244(d)(1)(D) and utilizing the affidavit execution dates as the dates on which prescription commenced to run, the petitioners' habeas applications were nevertheless time-barred.

8

*Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.), *cert. denied*, 516 U.S. 1005, 116 S.Ct. 557, 133 L.Ed.2d 458 (1995), *citing Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review.  *Amos*, 61 F.3d at 338 (citations omitted).  As explained in *Coleman v. Thompson*, 501 U.S. 722, 730-31, 111 S.Ct. 2546, 2554, 115 L.Ed .2d 640 (1991):  "In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity....  Without the rule, ... habeas would offer state prisoners whose custody was supported by independent and adequate state grounds ... means to undermine the State's interest in enforcing its laws."

In order to fulfill the independence requirement of the above-described doctrine, the last state court rendering a judgment in the case must "clearly and expressly" indicate that its judgment is independent of federal law and rests on a state procedural bar.  *Amos*, 61 F.3d at 338; *Harris*, 489 U.S. at 263, 109 S.Ct. at 1043.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last **reasoned** state court opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991) (emphasis added).

Petitioner raised, in his July 12, 2004 second post-conviction application, the same

ineffectiveness claim raised in the instant matter.[10]  On July 20, 2004, the district court denied petitioner's second post-conviction application and ineffectiveness claim as time-barred pursuant to La.C.Cr.P. art. § 930.8.[11]  Thereafter, petitioner, rather than seeking relief from the state appellate court in connection with the district court's July 20, 2004 adverse decision, filed a third post-conviction application with the district court, again raising his claim of ineffectiveness.[12]  On August 16, 2004, the district court issued an order noting its July 20, 2004 decision denying petitioner's ineffectiveness claim as time-barred and concluding that, at this point, not only was petitioner's claim untimely, it was also repetitive.[13]  On September 21, 2004, the Louisiana Fifth Circuit, finding "no error in the trial court's ruling of August 16, 2004," denied petitioner relief.  *State v. Barnes*, No. 04-KH-1082 (La. App. 5 Cir. 2004) (unpublished decision).[14]  On August 19, 2005, the Louisiana Supreme Court likewise denied petitioner's writ application.  *State ex rel. Barnes v. State*, 908 So.2d 679 (La. 2005).

    As reflected above, the state district court issued the last reasoned opinion with

---

[10]A copy of petitioner's second post-conviction application is contained in the State rec., vol. 5 of 6.

[11]A copy of the district court's July 20, 2004 opinion is contained in the State rec., vol. 5 of 6.

[12]A copy of petitioner's third post-conviction application is contained in the State rec., vol. 5 of 6.

[13]A copy of the district court's August 16, 2004 decision is contained in the State rec., vol. 5 of 6.

[14]A copy of the state appellate court's unpublished decision is contained in the State rec., vol. 5 of 6.

respect to petitioner's ineffectiveness claim.  The district court denied petitioner's claim

as untimely under La.C.Cr.P. art. 930.8, also noting that petitioner's claim was repetitive.

Given the fact that in its ruling, the state district court clearly relied upon a state

procedural bar in rejecting petitioner's claim, the "independent" requirement has been

satisfied.  Next, the court must determine whether or not this independent procedural bar

is also "adequate."

A procedural bar is "adequate" if it is applied evenhandedly to the vast majority of

similar claims."  *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125,

118 S.Ct. 1811, 140 L.Ed.2d 949 (1998), *citing Amos*, 61 F.3d at 339.  A state procedural rule

enjoys a presumption of adequacy when the state court expressly relies upon it in

deciding not to review a claim for collateral relief.  *Glover*, 128 F.3d at 902.  The burden

is on petitioner to establish that the state's procedural bar rule was not strictly and

regularly followed at the time it was applied to bar his or her claim.  *See Martin v. Maxey*,

98 F.3d 844, 847 (5th Cir.1996), *citing Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995).

Petitioner herein makes no showing that Article 930.8 is not evenhandedly applied, thus

the state court procedural rule is presumed adequate.[15]

A judgment resting on an independent and adequate state rule of procedural default

bars federal habeas review of a federal claim if the habeas petitioner cannot show "cause"

for the default and "prejudice attributed thereto", or demonstrate that the federal court's

---

[15]The U.S. Fifth Circuit has held that La. Code Crim. Proc. art. 930.8 is an adequate state court
rule to bar federal habeas review.  *Glover*, 128 F.3d at 902.

failure to review the defaulted claim will result in a "fundamental miscarriage of justice."
*Amos*, 61 F.3d at 338-39; *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d
594 (1977); *Harris*, 489 U.S. at 262, 109 S.Ct. at 1043; *Engle v. Isaac*, 456 U.S. 107, 129,
102 S.Ct. 1558, 1572, 71 L.Ed. 783 (1982).  The Supreme Court explained the cause and
prejudice requirement in *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d
397 (1986), which held that a showing of both cause and actual prejudice is required to
avoid the procedural bar.  *Murray*, 477 U.S. at 494-54, 106 S.Ct. at 2649.  Thus, if the
petitioner fails to establish cause for his procedural default, the court need not consider
the prejudice prong.  *Glover v. Hargett*, 56 F.3d 682, 684 (5th Cir. 1995), *citing Murray*,
477 U.S. at 494-95, 106 S.Ct. at 2649.

   In this case, petitioner fails to establish cause for his procedural default.  As stated
by the Supreme Court in *Murray*, the existence of cause for procedural default must
ordinarily turn on whether the prisoner can show that some objective factor external to the
defense impeded efforts to comply with the State's procedural rule.  *Murray*, 478 U.S. at
488, 106 S.Ct. at 2645.  Under this standard, cause can be demonstrated by showing that
the "factual or legal basis of a claim was not reasonably available", *Id.*, *citing Reed v.
Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984), or that governmental
interference rendered procedural compliance impracticable.  *Id.*, *citing Brown v. Allen*,
344 U.S. 443, 486, 73 S.Ct. 397, 422, 97 L.Ed. 469 (1953).  The question when
examining "cause" is not whether petitioner had actual knowledge of the facts supporting

his claim or grounds for relief but whether the claim could have been discovered through reasonably diligent investigation. *Woods v. Whitley*, 933 F.2d 321, 324 (5th Cir. 1991).

In this case, the facts supporting petitioner's ineffectiveness claim are the potential testimony of Wilford Stevens and Michael Lott. Petitioner knew about Wilford Stevens and his potential testimony prior to his May, 1998 trial, and Lott's version of events is set forth in an affidavit which Lott executed on August 23, 2003. Petitioner, however, waited until July 12, 2004, to file his state post-conviction application claiming that counsel was ineffective due to his failure to call Stevens and Lott as witnesses. Waiting such a lengthy period of time to seek post-conviction relief based upon counsel's alleged ineffectiveness, does not demonstrate the type of due diligence required in order to make the requisite showing of cause justifying petitioner's untimeliness.

Because petitioner has not demonstrated the requisite cause, his ineffective assistance of counsel claim is procedurally barred unless he can show that a fundamental miscarriage of justice will result if the court fails to review his habeas claim. In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001) (*citations omitted*). In this case, petitioner does not allege that he is actually innocent of shooting the victim, Travis McCall.

Finally, the court finds that petitioner's ineffective assistance of counsel claim is subject to dismissal on the merits.  The seminal Supreme Court decision regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the *Strickland* test, "it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed. 2d 180 (1993), *citing Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.  To prove prejudice under the *Strickland* standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Assuming, *arguendo*, that counsel was deficient in not discovering Lott and not calling Stevens and Lott as witnesses at trial, it is not reasonably probable that the result of petitioner's proceeding would have been different if not for counsel's deficiency.  As reflected in their affidavits, both Stevens and Lott, if called to testify at trial, would have stated that the victim, Travis McCall, had a grudge against petitioner and Lott would have

14

stated that the victim pulled a gun on petitioner.  However, a review of the trial transcript

reflects that testimony to this effect was presented to the jury via the trial testimony of

Terrall Paynes and Leonard Chest.  Paynes, who lived in the neighborhood where the

shooting occurred and knew both McCall and Barnes,[16] testified that McCall had

informed him that Barnes "was going to do him something" and he wanted Paynes to

inform Barnes that "it's on".[17]  Further, Paynes testified that McCall had a reputation in

the community as being a "violent person".[18]  Chest testified that he saw McCall shortly

before the shooting took place and that McCall had a gun in his hand.[19]

The significance of both Stevens and Lott's potential testimony to the effect that

petitioner shot McCall in self-defense is further undermined by the undisputed fact that

petitioner, presumably to protect himself, did not shoot McCall once, but rather, shot him

four times, once in the right side of his head, once in the left lateral chest, a third time in

McCall's "left middle chest", and a fourth time in the "right abdomen."[20]  These four

shots were fired despite the fact that McCall never pulled the trigger on his allegedly

drawn gun.[21]  The veracity of Lott's sworn statement to the effect that McCall, at the time

---

[16]*See* State rec., vol. 4 of 6, p. 933.

[17]*See* State rec., vol. 4 of 6, p. 934.

[18]*See* State rec., vol. 4 of 6, p. 948.

[19]*See* State rec., vol. 4 of 6, pp. 838, 839, 843, and 846.

[20]*See* State rec., vol. 3 of 6, pp. 570-573.

[21]*See* State rec., vol. 3 of 6, p. 633.

of the shooting, had, in fact, drawn his gun, is questionable given the testimony of investigating officers Christie Norman and Ralph Sacks who stated that following the shooting a gun was discovered not in the victim's hand or near his body, but rather "tucked inside [his] pants".[22]

Thus, given the fact that Stevens and Lott's testimony, based upon the statements contained in their affidavits, would have been largely cumulative and that petitioner's self-defense theory was critically undermined by the fact that the victim was shot not once, but four times, and that his gun was never fired and was discovered tucked inside his pants, the court finds that petitioner was not prejudiced, as required under *Strickland*, by virtue of counsel's alleged deficiency in failing to discover Lott and failing to call Stevens and Lott as witnesses at trial.  Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the instant application for federal habeas corpus relief be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

---

[22]*See* State rec., vol. 3 of 6, p. 595, lines 29-32 and p. 632.

16

notice that such consequences will result from a failure to object.  *Douglass v. United*

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __26th__ day of _____June_____, 2008.

LOUIS MOORE, JR.

United States Magistrate Judge